IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

DAVID M. RUTTENBERG, et al.      )
      )
      Plaintiffs,      )
      )
      v.      )      Case No. 1:06cv639
      )
FRANK JONES, et al.      )
      )
      Defendants.      )

## ORDER

The matter came before the Court on (i) defendant Detective White's motion to dismiss [docket # 4]; (ii) defendants Detective Lugo; City of Manassas Park, Virginia; Frank Jones; and John Evans's motion to dismiss [docket # 6]; (iii) defendant Thomas Kifer's answer and motion to dismiss [docket # 58]; (iv) defendant Prince William County's motion to stay [docket # 28]; and (v) defendant Prince William County's motion to abstain [docket # 29]. These matters have been fully briefed and the parties have presented oral argument. Accordingly, these motions are now ripe for disposition.

## I.[1]

On April 15, 1992, plaintiff, Triple D. Enterprises, Inc. ("Triple D"), a Maryland Corporation with its principal place of business in Manassas Park, Virginia, opened Rack & Roll Billiard Club ("RNR") in the Manassas Park Shopping Center. The following year, on September 10, 1993, RNR received its Virginia Alcoholic Beverage Control ("ABC") license to sell beer on the premises. Plaintiffs David Ruttenberg and Judith Ruttenberg, who are both citizens and residents of Maryland, own and operate Triple D.

---

[1]The facts recited herein are derived from plaintiffs' complaint and construed in the light most favorable to plaintiffs. *See Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989).

The defendants are (i) Mario Lugo, a detective with the Manassas Park Police Department; (ii) John Evans, the Chief of Police of Manassas Park, Virginia; (iii) Frank Jones, Mayor of the City of Manassas Park; (iv) the City of Manassas Park; (v) Robert White, a detective with the Prince William County Police Department; and (vi) Thomas Kifer, an RNR security officer and police informant.

In the fall of 2001, Detective Lugo began to date Nina Buell, a friend of plaintiff David Ruttenberg. According to plaintiffs, Lugo "did not like David Ruttenberg's friendship with Buell." At that time, Tina McKnight, an RNR waitress, informed David Ruttenberg that Buell had told her of a conversation with Detective Lugo, in which Lugo informed Buell that David Ruttenberg was under investigation for cocaine use and distribution. David Ruttenberg called Detective Lugo to discuss the allegation, and according to plaintiffs, Lugo "threatened" McKnight, until she retracted her previous statement. Plaintiffs allege that Detective Lugo then told David Ruttenberg that "he would 'take down' David Ruttenberg and RNR if he heard anything more about the issue."

That evening, David Ruttenberg called Detective Lugo's superior, Officer Larry Berry of the Manassas Park Police Department, and informed him of Detective Lugo's threats and activities, and indicated that "defendant Lugo seemed intent on destroying David M. Ruttenberg and RNR with his allegations that David Ruttenberg was under some kind of criminal investigation for drug distribution." According to plaintiffs, Officer Berry then cancelled a "ride-along" that Detective Lugo had arranged for himself and Buell.

Thereafter, in late 2001, plaintiffs claim that Detective Lugo initiated a plan to retaliate against David Ruttenberg. The plan began, when, according to plaintiffs, in December 2001, Detective Lugo initiated "bogus charges" against David Ruttenberg. Specifically, David Ruttenberg reported that an employee had stolen equipment from RNR, but when he learned that the employee faced significant jail time, David Ruttenberg decided not to pursue the complaint, and as a result, was charged with

2

filing a false police report.  The charges were subsequently dropped.  Plaintiffs contend Detective Lugo was involved in bringing the charges against David Ruttenberg because Detective Lugo was present in the courtroom when David Ruttenberg appeared.

After this incident, David Ruttenberg and Neil Ruttenberg, plaintiff's father, visited defendant John Evans, the Manassas Park Police Chief, to inform Chief Evans of the wrongful acts perpetrated by his police officers.  Plaintiffs claim that Chief Evans took no action on these complaints.

In Spring 2003, David Ruttenberg's female friend informed him that the Narcotics Task Force asked her to facilitate drug transactions on the premises of RNR in exchange for her not being prosecuted for charges of driving while intoxicated.  Plaintiffs claim that the true purpose of offering not to prosecute his female friend was to search for evidence that would create grounds for the revocation of Triple D's Alcoholic Beverage Control ("ABC") license and conditional use permit.

To this end, plaintiffs claim that Detective Lugo attempted to engineer a meeting of drug users at RNR, so that the Narcotics Task Force could raid RNR during the meeting.  David Ruttenberg learned of Detective Lugo's alleged plan through his female friend, and immediately complained to Chief Evans, who denied knowledge of Detective Lugo's activities.  Plaintiffs concede that at that time no raid of RNR took place.

Thereafter, in late 2003 or early 2004, Detective Lugo became the case agent for a Narcotics Task Force investigation into David Ruttenberg's alleged cocaine use and distribution at RNR.  At that time, Detective Lugo contacted defendant Kifer, a convicted felon and former employee of RNR. Plaintiffs allege that Kifer agreed to become a paid informant and assist Detective Lugo in investigating David Ruttenberg and RNR because Kifer held a grudge against David Ruttenberg.

In early 2004, Kifer resumed working for David Ruttenberg as a security officer at RNR and was informed of RNR's policy of not allowing drug dealers on the premises.  At the same time, in

February 2004, Detective Lugo recruited defendant Detective White to work for the Narcotics Task Force in the investigation of David Ruttenberg and RNR. Detective Lugo allegedly told Detective White that RNR was an "open air drug market." Plaintiffs allege that defendants Lugo, White, and Kifer "conspired to engineer drug activity on the premises of RNR in order to shut down RNR."

During this time period, David Ruttenberg would pay Jeffrey Price, a homeless individual, to clean up RNR. When David Ruttenberg became aware that Price had an arrest record, David Ruttenberg confronted Price, who allegedly told David Ruttenberg that he was working for the police and not engaged in any illegal activity.

Nonetheless, between February 25, 2004 and April 19, 2004, Detective White was involved in eight drug transactions at RNR, seven of which involved Price in some way. Plaintiffs claim that Kifer knew of the drug transactions allegedly engineered by Detective White and Price, but, in contravention of company policy, continued to allow known or suspected drug dealers to enter the RNR premises.

Then, on June 2, 2004, the Narcotics Task Force raided RNR with fifty police and law enforcement personnel. Plaintiffs contend that only 6 or 7 of the law enforcement personnel were ABC agents, and that many of the participants were SWAT team members. During the raid, plaintiffs allege that RNR patrons and employees were detained and searched. Additionally, David Ruttenberg's private office, which plaintiffs contend is not subject to the ABC permit, was searched by unidentified officers.

The night of the raid, David Ruttenberg, accompanied by a friend who was a police officer on sabbatical from Prince William County Police Department, went to the Northern Virginia Electrical Coop to pay RNR's electric bill. Upon arriving at the parking lot, plaintiffs claim that two Prince William County police cruisers blocked David Ruttenberg's car, and then emerged from the police

4

cruisers with weapons drawn and pointed at David Ruttenberg and his friend.  Once David

Ruttenberg's friend identified himself, the officers immediately withdrew.  Plaintiffs allege these

officers were members of the Narcotics Task Force acting at the direction of Detective Lugo.

At this time, plaintiffs further claim that Mayor Jones and Chief Evans began patrolling the

area around RNR to obtain information about alleged illegal activity occurring at RNR.  Specifically,

David Ruttenberg claims that he and others observed defendant Mayor Jones outside RNR at odd

hours of the night, including past midnight on numerous occasions.

As a result of the raid, the ABC Board identified four violations at RNR: (i) disorderly

conduct (based on information provided by Detective White that on three occasions female patrons

exposed their breasts); (ii) meeting or rendezvous for users of narcotics/drunks/etc.; (iii) kept or

allowed to be kept unauthorized alcoholic beverages; and (iv) consumption of alcoholic beverages by

a person less than (21) years of age.  Based on these violations, in late 2005, the ABC Board held an

evidentiary hearing and revoked Triple D's ABC license.  Plaintiffs do not allege here that they were

denied due process during the ABC hearing; rather, they contend that the revocation of the ABC

license stemmed from the "intentional, illegal, conscience shocking actions of" the defendants.  Then,

in 2006 the Manassas Park City Council voted to deny Triple D's request to renew its conditional use

permit.  Both decisions are currently on appeal, the revocation of the ABC license has been appealed

to the ABC Board and the denial of the conditional use permit has been appealed to the Circuit Court

for Prince William County, Virginia.

Distilled to their essence, the complaint's allegations amount to the following:

(i)     That Detective Lugo held a grudge against David Ruttenberg and thus conspired with
        Detective White, Chief Evans, Mayor Jones, and Kifer to harm David Ruttenberg's
        business by causing the loss of Triple D's ABC license and the denial of Triple D's
        attempt to renew its conditional use permit;

(ii)    To accomplish this goal, defendants conspired to facilitate undercover drug

transactions at RNR so that the ABC Board would have evidence sufficient to revoke RNR's license;

(iii)    In this regard, Detective White, acting undercover, arranged to enter into 8 drug transactions on the premises of RNR;

(iv)    Then, Detective Lugo conspired with others to raid RNR under the guise of an ABC administrative search;

(v)    This raid uncovered four ABC violations: (a) disorderly conduct (specifically, three incidents of female patrons at RNR exposing their breasts); (b) RNR's role as a meeting place or rendezvous for users of narcotics/drunks/etc.; (c) the presence of unauthorized alcoholic beverages on RNR premises; and (d) consumption of alcoholic beverages on RNR premises by an underage individual;

(vi)    Based on these violations, the ABC Board revoked Triple D's ABC license and the Manassas Park City Council elected not to renew Triple D's conditional use permit.

Based on these allegations, on June 1, 2006, plaintiffs filed the instant complaint alleging several causes of action against defendants, namely:

(i)    Count I (Against All Defendants): Violation of Substantive Due Process Rights in Connection With Deprivation of Property Interests Under Color of State Law Under 42 U.S.C. § 1983;

(ii)    Count II (Against Defendants Evans, Lugo, White, Kifer, and the City of Manassas Park, Not Defendant Jones): Deprivation of First Amendment Rights Under Color of State Law Under 42 U.S.C. § 1983;

(iii)    Count III (Against Defendants Evans, Lugo, White, Kifer, and the City of Manassas Park, Not Defendant Jones): Deprivation of Fourth Amendment Rights Under Color of State Law Under 42 U.S.C. § 1983;

(iv)    Count IV (Against Defendants Jones, Evans, Lugo, White, and the City of Manassas Park, Not Defendant Kifer): Violation of Equal Protection Clause Rights in Connection With Deprivation of Property Interests Under Color of State Law Under 42 U.S.C. § 1983;

(v)    Count V (Against Defendants Jones, Evans, Lugo, White, and Kifer, Not Defendant City of Manassas Park): Conspiracy to Violate Plaintiffs' Substantive Due Process, Equal Protection Clause, First Amendment, and Fourth Amendment Rights in Violation of 42 U.S.C. § 1983;

(vi)    Count VI (Against Defendants Jones, Evans, Lugo, White, and Kifer, Not Defendant City of Manassas Park): Tortious Interference With Contract;

(vii)   Count VII  (Against Defendants Jones, Evans, Lugo, White, and Kifer, Not Defendant City of Manassas Park): Common Law Civil Conspiracy; and

(viii)   Count VIII  (Against Defendants Jones, Evans, Lugo, White, and Kifer, Not Defendant City of Manassas Park): Business Conspiracy in Violation of VA Code Ann. §§ 18.2-499, 18.2-500.

Defendants have moved to dismiss these claims for failure to state a claim or, in the alternative to abstain or stay this matter pending resolution of plaintiffs' appeals of the ABC license and conditional use permit decisions.[2]

## II.

The standard to be applied in deciding a motion to dismiss is well-established.  Dismissal for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P. is only appropriate where, construing the allegations in the light most favorable to the plaintiffs and assuming the facts alleged to be true, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984);

---

[2]As a preliminary matter, defendants' motion to abstain or stay this matter pending resolution of plaintiffs' appeal to the ABC Board and the Circuit Court for Prince William County, Virginia is unpersuasive.  Specifically, *Younger* abstention is appropriate only where (i) there is an ongoing state judicial proceeding; (ii) the proceeding implicates important state interests; and (iii) there is an adequate opportunity to present the federal claims in the state proceeding.  *Cinema Blue v. Gilchrist*, 887 F.2d 49, 52 (4th Cir. 1989).  Here, however, *Younger* abstention is inappropriate because it does not appear that plaintiffs can raise their federal constitutional claims in the pending ABC Board proceedings.  Even assuming, plaintiffs may raise constitutional issues before the Circuit Court for Prince William County, Virginia, that does not suffice to require abstention of this entire matter. Defendant's argument for *Colorado River* abstention merits the same fate.  *Colorado River* abstention "allows a district court to abstain from adjudicating a controversy before it in favor of parallel state proceedings *only under exceptional circumstances* for reasons of wise judicial administration."  *Colorado River v. United States,* 424 U.S. 800, 817-18 (1976).  No such exceptional circumstances are apparent here.  Finally, *Burford* provides that a federal court has the inherent right to abstain from cases if, in its sound discretion, it finds that its exercise of jurisdiction "may be prejudicial to the public interest, for it is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy."  *Burford v. Sun Oil Co.*, 319 U.S. 315, 318 (1943).  There being no good cause to abstain, *Burford* abstention is inappropriate.  Accordingly, neither a stay nor abstention is appropriate, especially given the result reached here.

*Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989).  While the facts alleged in the complaint are assumed true, any unwarranted inferences, unreasonable conclusions, or arguments, need not be accepted.  *See generally* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (2d ed. 1990 & 1998 Supp.).

## A. Count I

In Count I, plaintiffs contend that they have a constitutionally protected property interest in the continued ownership and operation of RNR, and more specifically, in both the ABC license and the conditional use permit.  Plaintiffs further allege that defendants deprived plaintiffs of these two constitutionally protected property interests by engaging in a scheme to defame David Ruttenberg and RNR and by fabricating evidence, in violation of 42 U.S.C. § 1983.

To state a claim for deprivation of due process under 42 U.S.C. § 1983, plaintiff must allege that "(1) plaintiff had a property right or interest; (2) the state deprived him or her of this interest; and (3) the state's action falls so far beyond the outer limits of legitimate governmental authority that no process could cure the deficiency."  *Sunrise Corp. v. Myrtle Beach*, 420 F.3d 322, 328 (4th Cir. 2005).  Importantly, "[t]he protection of substantive due process is indeed narrow and covers only state action which is 'so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protection or of adequate rectification by any post-deprivation state remedies."  *Sylvia Dev. Co. v. Calvert County*, 48 F.3d 810, 828 (4th Cir. 1995).

### 1. Conditional Use Permit

First, plaintiffs claim that they have been deprived of a property interest in the continued operation of their business because defendants' wrongful actions caused the denial of plaintiffs' application for renewal of Triple D's conditional use permit.  This claim fails because, as the Fourth

Circuit has held, "to have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  *Gardner v. City of Baltimore*, 969 F.2d 63, 66 (4th Cir. 1992).  In the case of a regulatory permit, a legitimate claim of entitlement exists where "the local agency *lacks all discretion* to deny issuance of the permit or to withhold its approval."  *Id.*  Thus, "[e]ven if in a particular case, objective observers would estimate that the probability of issuance was extremely high, the opportunity of a local agency to deny issuance suffices to defeat the existence of a federally protected property interest."  *Id.*

In this case, the Manassas Park Zoning Ordinance provides that a conditional use permit is valid for a period of one year, after which the governing body must grant or deny the permit for the following year.  The governing body must consider several broad standards in reviewing a conditional use permit.  *See* Manassas Park, Va., Ordinances ch. 31, § 31-34 (2005) (Conditional uses; guides and standards) (stating that a conditional use permit will be approved if it satisfies several standards, including, that the propose use is in accordance "with the general purpose and intent" of the zoning district, "will not adversely affect the . . . general welfare," and "will be in harmony with the purpose of this chapter").  It is pellucidly clear then that the decision whether to grant or deny a conditional use permit request involves discretionary decision making by the zoning board, and thus plaintiffs have no legitimate claim of entitlement to the conditional use permit.  *See Carrico v. Village of Sugar Mt.*, 114 F. Supp. 2d 422, 426 (W.D.N.C. 2000) (no property interest in the reissuance of a permit where defendants had discretion to refuse to reissue it).  Where, as here, plaintiffs have no protectible property interest, the deprivation of due process claim necessarily fails.  *See Sunrise*, 420 F.3d at 328.

Additionally, this claim fails because the state's action does not fall so far beyond the outer limits of legitimate governmental authority that no process could cure the deficiency.  *See id.*  In other

words, there is no due process violation where, as here, the law provides adequate post-deprivation remedies for plaintiffs' claim. *See Hudson v. Palmer*, 468 U.S. 517, 533-35 (1984) (holding that where state employees intentionally deprived plaintiff of property there is no due process violation where the state provides an adequate postdeprivation remedy). Specifically, Virginia law provides avenues for judicial appeal of an adverse conditional use permit decision. *See* Va. Code § 15.2-2314. Plaintiffs have not challenged the adequacy of these state law remedies and indeed, are currently actively utilizing these post-deprivation procedures to challenge the denial of their conditional use permit in the Circuit Court for Prince William County, Virginia. Thus, dismissal is appropriate where, as here, state law provides adequate judicial review of the adverse conditional use permit decision. *See Sylvia*, 48 F.3d at 828 (dismissing claim where state procedures were available to address zoning board's decision and noting that "the fact that established state procedures were available to address and correct illegal actions by the Board belies the existence of a substantive due process claim").

**2. ABC License**

Plaintiffs also claim that they have been deprived of a property interest in the continued operation of their business because defendants caused plaintiffs to lose the ABC license. As defendants correctly concede, plaintiffs' ABC license is a protectible property interest. *See Barry v. Barchi*, 443 U.S. 55, 62 n.11 (1979) (noting that a protectible property interest exists where a license may be revoked or suspended only upon proof of certain contingencies). Nonetheless, plaintiffs' claim fails because the law provides adequate post-deprivation remedies for plaintiffs claim. *See Hudson*, 468 U.S. at 533-35 (holding that where state employees intentionally deprived plaintiff of property there is no due process violation where the state provides an adequate postdeprivation remedy). Specifically, Virginia law provides avenues for judicial appeal of an adverse ABC Board

10

decision.  *See* Va. Code § 4.1-227.  Plaintiffs have not challenged the adequacy of these state law remedies and indeed, plaintiffs are currently actively utilizing these post-deprivation procedures by appealing to the Virginia ABC Board.  Thus, dismissal is appropriate where, as here, state law provides adequate judicial review of the ABC Board's decision.  *See Sylvia*, 48 F.3d at 828 (dismissing claim where state procedures were available to address zoning board's decision and noting that "the fact that established state procedures were available to address and correct illegal actions by the Board belies the existence of a substantive due process claim").

## B.[3] Count II

Next, in Count II, plaintiffs claim that defendants deprived them of their First Amendment Rights to make legitimate complaints to law enforcement officials without fear of retaliation.  In particular, plaintiffs allege that David Ruttenberg complained to the Manassas Park Police Department regarding the allegedly unlawful actions of Detective Lugo and other police officers, but no action was taken.  Instead, defendants allegedly retaliated by initiating a multi-year pattern of conduct designed to destroy David Ruttenberg and RNR.

To state a claim of First Amendment retaliation, plaintiffs must allege three elements: "(1) that their speech was protected by the First Amendment; (2) that the defendants' alleged retaliatory action adversely affected their constitutionally protected speech; and (3) that a causal relationship exists between their speech and the defendants' retaliatory action."  *Cottom v. Town of Seven Devils*, 30 Fed. Appx. 230, at *9-10 (4th Cir. 2002) (citing *Suarez Corp. v. McGraw*, 202 F.3d 676, 685-86 (4th Cir. 2000)).  Significantly, "not every reaction made in response to an individual's exercise of his First

---

[3]Because David Ruttenberg was the only plaintiff to exercise his First Amendment rights by complaining to the police about defendants' alleged conduct, plaintiffs appear to concede that this claim must be dismissed with prejudice as to plaintiffs Triple D and Judith Ruttenberg.  Given the analysis and result reached here, it is unnecessary to address this point.

Amendment right to free speech is actionable retaliation." *Suarez*, 202 F.3d at 685.  Thus, "to satisfy

this standard, it is essential that plaintiffs demonstrate some adversity in response to the exercise of

protected rights." *Cottom*, 30 Fed. Appx. at *9-10.  In particular, "[i]n order to state a retaliation

claim, [plaintiffs] are required to show that [defendants'] actions adversely impacted these *First

Amendment* rights." *ACLU v. Wicomico County, Md.*, 999 F.2d 780, 785 (4th Cir. 1993) (emphasis

added).

> Plaintiffs do not specifically allege how defendants violated their First Amendment rights,

relying instead on a generalized assertion that defendants retaliated against plaintiffs by initiating a

pattern of wrongful conduct to deprive plaintiffs of their constitutionally protected property interests.

This allegation is insufficient to sustain a First Amendment retaliation claim.  To be sure, plaintiff

David Ruttenberg's complaints to the Manassas Park Police Department constitute speech protected

by the First Amendment.  *See City of Houston v. Hill*, 482 U.S. 451, 461 (1987) (stating that "[t]he

First Amendment protects a significant amount of verbal criticism and challenge directed at police

officers").  Nevertheless, plaintiffs' claim fails to allege any adverse impact on their First Amendment

rights.  *See ACLU v. Wicomico County, Md.*, 999 F.2d 780, 785 (4th Cir. 1993).  Where, as here,

plaintiffs fail to allege any "infringement of [their] rights to free speech because of [defendant's

actions] . . . [and] fails to allege any harm whatsoever to [their] speech . . . [plaintiffs] fail to allege

facts sufficient to show the necessary elements to state a First Amendment retaliation claim." *White v.

Haines*, No. 7:05-cv00020, 2005 U.S. Dist. LEXIS 33688, at *10 (W.D.Va. 2005).[4]  Accordingly,

plaintiffs' First Amendment claim must be dismissed.

---

[4] *See Hines v. Proper*, 442 F. Supp. 2d 216, 222-23 (M.D. Pa. 2006) (dismissing complaint where plaintiff complained solely of being deprived of Fourth Amendment rights); *Dingus v. Moye*, No. 7:02CV00983, 2004 U.S. Dist. LEXIS 60, at *23-24 (W.D.Va. 2004) (granting summary judgment where plaintiff did not claim that defendant's alleged threats prevented her from exercising her First Amendment rights).

### C.[5] **Count III**

In Count III plaintiffs claim that defendants deprived them of their Fourth Amendment rights. In particular, plaintiffs contend that the June 2, 2004 ABC raid violated plaintiffs' Fourth Amendment right to be free from unreasonable search and seizure. Plaintiffs admit that the raid was conducted pursuant to ABC's warrantless regulatory search authority, but contend that defendants violated the Fourth Amendment because the raid was actually an unreasonable warrantless administrative search conducted under the guise of a valid administrative ABC inspection. Defendants respond that they are entitled to qualified immunity on this claim.

Analysis of plaintiffs' claim properly begins with recognition of the principle that qualified immunity "shield[s] [governmental agents] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Behrens v. Pelletier*, 516 U.S. 299, 305-06 (1996). Significantly, "qualified immunity is an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). Unlike a defense to liability then, qualified immunity is "effectively lost if a case is erroneously permitted to go to trial." *Id.* at 201. Thus, a defendant's entitlement to qualified immunity must be resolved "at the earliest possible stage in litigation." *Id.*

The Supreme Court has established a two-part qualified immunity inquiry. The threshold question is whether, when "taken in the light most favorable to the party asserting the injury . . . the facts alleged show the [defendant's] conduct violated a constitutional right." *Saucier*, 533 U.S. at 201. If so, the second question is "whether the right was clearly established" at the time the alleged

---

[5]Because Judith Ruttenberg did not allege any deprivation of her Fourth Amendment rights and because Triple D, as a corporate entity, does not have any Fourth Amendment rights, plaintiffs appear to concede that this claim must be dismissed with prejudice as to Triple D and Judith Ruttenberg. Given the analysis and result reached here, it is unnecessary to address this point.

constitutional violation occurred. *Id.* Importantly, the second "inquiry . . . must be undertaken in light of the *specific* context of the case, not as a broad general proposition." *Id.* (emphasis added). Therefore, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted*." *Id.* (citing *Wilson v. Layne*, 536 U.S. 603, 615 (1999) (explaining that "the right allegedly violated must be defined at the appropriate level of specificity before a court an determine if it was clearly established"). Accordingly, if the plaintiff fails to allege "a violation of *clearly established law*, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis added).[6]

Thus, the threshold question is whether, the facts alleged show that defendants' conduct violated the Fourth Amendment. *See Saucier*, 533 U.S. at 201. As plaintiffs concede, RNR is subject to warrantless administrative searches under 3 Va. Admin. Code § 5-50-70(B), which provides that the ABC Board and its special agents "shall be allowed free access during reasonable hours to every place in the Commonwealth where alcoholic beverages are manufactured, bottled, stored, offered for sale or sold, for the purpose of examining and inspecting such place," and 3 Va. Admin. Code § 5-50-70(C), which provides that, "[i]n addition to special agents, other law-enforcement officers in the performance of their official duties shall be allowed free access to any retail licensed establishment for the purpose of observation of activities on those licensed premises during reasonable hours." Plaintiffs do not challenge the ABC Board's search authority, but rather contend that the search was unreasonable given the manner in which it was conducted. In particular, plaintiffs allege (i) that

---

[6] *See also Meeker v. Edmundson*, 415 F.3d 317, 320 (4th Cir. 2005) ("Only if a plaintiff alleges the violation of a clearly established constitutional right does his complaint survive a motion to dismiss on qualified immunity grounds."); *Martin v. St. Mary's Dep't of Soc. Servs.*, 346 F.3d 502, 505-06 (4th Cir. 2003) (explaining that if there is a legitimate question as to whether an official's conduct violated constitutional rights, the official is entitled to qualified immunity).

Detective Lugo instigated the ABC raid to harm plaintiffs' business by seeking evidence of drug use and distribution at RNR; (ii) that over 50 police officers, including SWAT team members, were used to conduct the search; (iii) that law enforcement officers entered David Ruttenberg's private office; and (iv) that patrons were ordered to line up against the wall to be searched.

To be sure, the Fourth Amendment requires that warrantless administrative searches, as here, be reasonable. *New York v. Burger*, 482 U.S. 691 (1987). In this case, it is doubtful that plaintiffs' allegations establish an unreasonable administrative search and hence a Fourth Amendment violation. First, plaintiffs' allegation that Detective Lugo was motivated by an improper desire to uncover evidence of drug use and drug transactions at RNR to cause the ABC Board to raid RNR does not suffice to render unreasonable an otherwise reasonable search. As the Sixth Circuit has stated, "the fact that the true motivation for the warrantless search may have been to gather evidence capable of supporting convictions under the criminal laws is not enough to make the search unreasonable." *Hamilton v. Lokuta*, No. 92-2361, 1993 U.S. App. LEXIS 29172 at *7 (6th Cir. 1993) (citing *Burger*, 482 U.S. at 715) (noting that the "presumed desire to put [plaintiff] out of business may or may not have been justified, but we do not believe that it could suffice to defeat [defendant's] qualified immunity defense").[7] Second, as numerous courts have noted, there is no "constitutional significance in the fact that police officers, rather than 'administrative' agents are permitted to conduct the [administrative] inspection." *Burger*, 482 U.S. at 717.[8] Third, it is doubtful that defendants exceeded

_____

[7] *See also Cottom*, 30 Fed. Appx. at 237 (affirming summary judgment where plaintiffs alleged, "based only on information and belief, that [defendant] requested a fire inspection . . . out of some sinister desire to put plaintiffs out of business"). Moreover, where the alleged facts do not establish that defendant violated a clearly established constitutional right, "[b]are allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." *Harlow v. Fitzgerald*, 457 US 800, 818 (1982).

[8] *See Crosby v. Paulk*, 187 F.3d 1339, 1348 (11th Cir. 1999) (finding it "constitutionally insignificant" that forty law enforcement officers assisted the administrative inspection); *see also* 3

the scope of a permissible administrative search by entering David Ruttenberg's private office, as this office is located on the premises of RNR.  This is so because the ABC Board and its special agents are allowed "free access" to "*every place* in the Commonwealth where alcoholic beverages are . . . stored, offered for sale or sold." 3 Va. Admin. Code. § 5-50-70(B).  Finally, because the Fourth Amendment right to be free from unreasonable searches is a personal right, which cannot be asserted vicariously, plaintiffs cannot claim that the search was unreasonable because patrons, who are not parties to this suit, were subjected to an allegedly unreasonable search.  *See Rakas v.* Illinois, 439 U.S. 128, 133-34 (1978); *Crosby*, 187 F.3d at 1346 (analyzing defendant's qualified immunity claim and stating that plaintiff's "cannot assert Fourth Amendment claims based on governmental intrusions on the rights of others than themselves").  Given these considerations, it is doubtful that defendants violated plaintiffs' Fourth Amendment rights by conducting the administrative search.[9]  In any event, where, as here, "there is a legitimate question as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity."  *Martin v. St. Mary's Dep't of Soc. Servs.*, 346 F.3d 502, 505-06 (4th Cir. 2003).

Nevertheless, even assuming, without deciding, that the ABC search was an unreasonable administrative search in violation of the Fourth Amendment, the unsettled state of the law in this regard makes pellucidly clear that, on this record, plaintiffs have alleged facts sufficient to establish a

---

Va. Admin. Code § 5-50-70(c) (authorizing the presence of law enforcement officials to observe activities at any licensed establishment).

[9]A different result might well obtain in this case had plaintiffs alleged that defendants, under the guise of an administrative search, conducted numerous searches, including searches of areas clearly beyond RNR's premises.  *Compare Cottom*, 30 Fed. Appx. 230 (finding that administrative search did not violate Fourth Amendment where there was a legitimate need for increased police supervision given prior violations of alcohol laws and where the search produced evidence of three violations), *with Turner*, 848 F.2d at 445 (finding no qualified immunity where officer searched the premises at least one hundred times, in excess of regular practice, without justification).

violation of a *clearly established* constitutional right.  *See Saucier*, 533 U.S. at 201 (holding that

qualified immunity is defeated only where "it would be *clear* to a reasonable officer that his conduct

was unlawful *in the situation he confronted*").  Accordingly, the defendants are entitled to qualified

immunity and dismissal of plaintiffs' Fourth Amendment claim.  *Mitchell v. Forsyth*, 472 U.S. 511,

526 (1985) (explaining that if plaintiff fails to allege a violation of clearly established constitutional

right "a defendant pleading qualified immunity is entitled to dismissal before the commencement of

discovery").[10]

### D. Count IV

In Count IV, plaintiffs claim that defendants violated the Equal Protection Clause by

fabricating evidence against them, and thus, selectively enforcing both ABC laws and narcotics laws.

To sustain a claim under the Equal Protection Clause, a plaintiff must provide evidence that he was

treated differently from others who are similarly situated to him and that the acts forming the basis of

plaintiff's claim were motivated by a discriminatory purpose.  *See Pers. Adm'r of Mass v. Feeney*,

442 U.S. 256, 272-74 (1979).  Plaintiffs' conclusory allegations are plainly insufficient to state a

cognizable Equal Protection claim.  Plaintiffs do not allege the existence of any similarly situated

persons, nor do they allege that they were treated differently from any such persons.  Accordingly,

plaintiffs' claim must be dismissed.

### E. Count V

Next, in Count V, plaintiffs allege that defendants conspired to violate their substantive due

process, Equal Protection Clause, First Amendment, and Fourth Amendment rights.  As stated herein,

---

[10]*Meeker*, 415 F.3d at 320 ("Only if a plaintiff alleges the violation of a clearly established
constitutional right does his complaint survive a motion to dismiss on qualified immunity grounds.").
*See also Crosby*, 187 F.3d at 1350 (finding that defendants were entitled to qualified immunity
because the administrative searches "were not violative of clearly established law governing
warrantless administrative searches").

plaintiffs' substantive due process, Equal Protection Clause, First Amendment, and Fourth Amendment claims must be dismissed.  Given this, it is axiomatic that plaintiffs' conspiracy claim, based on these now-dismissed predicate violations, must likewise be dismissed.  *Ritchie v. Jackson*, 1996 U.S. App. LEXIS 26644, at *5 (4th Cir. 1996) ("To prove a conspiracy under § 1983, it is necessary that there have been, besides the agreement, an actual deprivation of a right secured by the Constitution and law.").

It should be noted, however, that even if any of plaintiffs' underlying claims were proper, dismissal of this conspiracy claim is proper because plaintiffs' complaint fails to allege any facts demonstrating an agreement amongst the alleged co-conspirators.  *See Ballinger v. North Carolina Agricultural Extension Service*, 815 F.2d 1073, 1076 (4th Cir. 1981) (stating that an essential element of a conspiracy to deprive a plaintiff of his constitutional rights is an agreement to do so).  Plaintiffs bringing a conspiracy claim must allege facts establishing a "unity of purpose or common design" to injure plaintiffs.  *See American Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946).  Importantly, "[t]he mere fact that each of the[] actors played a part in the events is not sufficient to show a unity of purpose." *Brown v. Angelone*, 938 F. Supp. 340, 346 (4th Cir. 1996).  Thus, where, as here, "the complaint makes only conclusory allegations of a conspiracy under § 1983 and fails to demonstrate any agreement or meeting of the minds among the defendants, the court may properly dismiss the complaint." *Id.*; *Scinto v. Preston*, 170 Fed. Appx. 834, 836 (4th Cir. 2006) ("[C]onclusory allegations of conspiracy do not state a claim for relief under § 1983.").  Accordingly, plaintiffs' claim must be dismissed.

### F. State Claims

As all of plaintiffs' federal claims, over which there is jurisdiction pursuant to 28 U.S.C. § 1331, have been dismissed, plaintiffs' state law claims contained in Count VI, Count VII, and Count

VIII, will be dismissed without prejudice, pursuant to 28 U.S.C. § 1367(c); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (explaining that supplemental jurisdiction "is a doctrine of discretion"); *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995) (noting that "[t]he doctrine of supplemental jurisdiction indicates that federal courts generally have discretion to retain or dismiss state law claims when the federal basis for an action drops away").

Accordingly, for these reasons, and for good cause,

It is hereby **ORDERED** that defendant Detective White's motion to dismiss; defendants Detective Lugo; City of Manassas Park, Virginia; Frank Jones; and John Evans's motion to dismiss; and defendant Kifer's motion to dismiss are **GRANTED** insofar as Claims 1 through 5 are **DISMISSED WITH PREJUDICE** and Claims 6 through 8 are **DISMISSED WITHOUT PREJUDICE**.

It is further **ORDERED** that defendant Prince William County's motion to stay and defendant Prince William County's motion to abstain are **DENIED**.

The Clerk is directed to send a copy of this Order to all counsel of record and to place this matter among the ended causes.


_____/s/_____
Alexandria, Virginia                                   T. S. Ellis, III
December 13, 2006                                  United States District Judge

19